EXHIBIT 1

# NOTE

 



August 25, 2005                    ENCINO                    CA
[Date]                             [City]                    [State]

3853 MOUNT VERNON DRIVE, LOS ANGELES, CA 90008
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    574,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
JPMORGAN CHASE BANK, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    5.750 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on October 1, 2005    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on September 1, 2035 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. BOX 78824
PHOENIX, AZ  85062                              or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $    3,349.71

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-5N (0005)          Form 3200 1/01
VMP MORTGAGE FORMS - (800)521-7291

**Original Note**

Page 1 of 3          Initials: L.R.



## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     6.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.



**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Linda Roth_ _____ (Seal)
                                -Borrower
LINDA ROTH
Social Security No. ███████████

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

*[Sign Original Only]*

# ALLONGE TO MORTGAGE NOTE

**LOAN NUMBER:** ███████

**NOTE DATED:**   August 25, 2005

**LOAN AMOUNT:**  $574,000.00

**MORTGAGOR(s):**  Linda Roth

**PROPERTY ADDRESS:**  3853 Mount Vernon Drive, Los Angeles, CA 90008

Allonge to one certain Mortgage Note dated, August 25, 2005 in favor of JPMorgan Chase Bank, N.A.,  executed by Linda Roth

 Pay to the order **U.S. Bank National Association, as Trustee, successor In interest to Wachovia Bank N.A., as Trustee, for Chase Mortgage Finance Trust Series 2005-S3**

without recourse

**SELLER:  JPMORGAN CHASE BANK, N.A .**

**BY:**        _Tammy J Cordova_

**Typed Name:**    _Tammy J Cordova_

**Title:**        _Vice President_

Authorized Officer

EXHIBIT 2



This page is part of your document - DO NOT DISCARD

05 2161969

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**09/08/05 AT 08:00am**

**TITLE(S) :**

L E A D      S H E E T

FEE

FEE $ 5 2 SS 16
DAF $ 2
C-20

CODE
20

CODE
19

CODE
9

D.T.T.

NOTIFICATION SENT-S4

**Assessor's Identification Number (AIN)**
To be completed by Examiner OR Title Company in black ink.        **Number of AIN's Shown**

THIS FORM IS NOT TO BE DUPLICATED

GATEWAY TITLE COMPAN

2

Recording Requested By:
FEDERAL ESCROW , INC
6345 BALBOA BLVD, STE 247
ENCINO, CA 91316

Return To:
CHASE HOME FINANCE,LLC.
1040 OLIVER ROAD
MONROE LA 71201

Attention:
CUSTODY SERVICES

Prepared By:    MONA LOPEZ

05  2161969

─────────────── [Space Above This Line For Recording Data] ───────────────

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated    August 25, 2005
together with all Riders to this document.
**(B) "Borrower"** is  LINDA ROTH, MARRIED

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is   JPMORGAN CHASE BANK, N.A.

Lender is a  BANK
organized and existing under the laws of   the U.S.A.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT       Form 3005 1/01

6(CA) (0005)
Page 1 of 15        Initials: *L.R.*
VMP MORTGAGE FORMS - (800)521-7291

Lender's address is **1111 POLARIS PARKWAY**
**COLUMBUS OH 43240**
Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is COMMONWEALTH LAND TITLE CO.

**(E) "Note"** means the promissory note signed by Borrower and dated **August 25, 2005**
The Note states that Borrower owes Lender
**Five Hundred Seventy-Four Thousand, and 00/100** Dollars
(U.S. $  **574,000.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **September 1, 2035**.
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☐ Second Home Rider
☐ Balloon Rider    ☐ Planned Unit Development Rider    ☐ 1-4 Family Rider
☐ VA Rider    ☐ Biweekly Payment Rider    ☐ Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

-6(CA) (0005)    Page 2 of 15    Initials: _L. R._    Form 3005    1/01

**05 2161969**

9/8/05

4

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY                                    of    LOS ANGELES                                    :

          [Type of Recording Jurisdiction]                                    [Name of Recording Jurisdiction]

See Attached Legal Description

EXHIBIT "A"

Parcel ID Number: ███████                which currently has the address of
        3853 MOUNT VERNON DRIVE                                    [Street]
        LOS ANGELES                [City], California  90008    [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

(2491) -6(CA) (0005)                Page 3 of 16                Initials: L.R.            Form 3005  1/01

05 2161969

8/8/05

5

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

-6(CA) (0005)                    Page 4 of 15          Initials: _L.R._          Form 3005  1/01

05 2161969

9/8/05

6

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

Initials: _L.R._

-6(CA) (0005)      Page 5 of 15      Form 3005  1/01

05 2161969

7

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Initials: _L·R·_

-6(CA) (0005)          Page 6 of 15          Form 3005   1/01

05 2161969

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Initials: _L.R._

-6(CA) (0005)                    Page 7 of 16                    Form 3005   1/01

**05 2161969'**

9

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

-6(CA) (0005)                          Page 8 of 15              Initials *L.R.*          Form 3005   1/01

05  2161969

*10*

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

-6(CA) (0005)　　　　　　Page 9 of 15　　　Initials: *L.R.*　　Form 3005　1/01

05 2161969

9/8/05

11

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower
or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against
any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify
amortization of the sums secured by this Security Instrument by reason of any demand made by the original
Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or
remedy including, without limitation, Lender's acceptance of payments from third persons, entities or
Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or
preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants
and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who
co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this
Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the
terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security
Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or
make any accommodations with regard to the terms of this Security Instrument or the Note without the
co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes
Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain
all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from
Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in
writing. The covenants and agreements of this Security Instrument shall bind (except as provided in
Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with
Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this
Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees.
In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific
fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge
fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so
that the interest or other loan charges collected or to be collected in connection with the Loan exceed the
permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the
charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted
limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal
owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the
reduction will be treated as a partial prepayment without any prepayment charge (whether or not a
prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by
direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out
of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument
must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to
have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's
notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers
unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address
unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly
notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's
change of address, then Borrower shall only report a change of address through that specified procedure.
There may be only one designated notice address under this Security Instrument at any one time. Any
notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address
stated herein unless Lender has designated another address by notice to Borrower. Any notice in
connection with this Security Instrument shall not be deemed to have been given to Lender until actually
received by Lender. If any notice required by this Security Instrument is also required under Applicable
Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security
Instrument.

Initials: L.R.

-6(CA) (0005)                                    Page 10 of 15                                    Form 3005    1/01

05 2161969

9/8/05

12

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Initials: *L.R.*

-6(CA) (0005)                Page 11 of 15                Form 3005  1/01

05 2161969

13

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

-6(CA) (0005)                    Page 12 of 15        Initials: *LR*        Form 3005   1/01

05  2161969

9/8/05

14

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials: L.R.

-6(CA) (0005)    Page 13 of 15    Form 3005  1/01

05 2161969

9/8/05

15

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                                          -Borrower

_____          _____ (Seal)
                                                          -Borrower

*Linda Roth* _____ (Seal)      _____ (Seal)
LINDA ROTH        -Borrower                               -Borrower

_____ (Seal)   _____ (Seal)
                        -Borrower                         -Borrower

_____ (Seal)   _____ (Seal)
                        -Borrower                         -Borrower

-6(CA) (0005)                    Page 14 of 15            Form 3005  1/01

05 2161969

9/8/05

16

State of California
County of LOS ANGELES                                      } ss.

On August 25, 2005                   before me, WILLIAM SMITH, NOTARY PUBLIC
                                                              personally appeared
LINDA ROTH, MARRIED

                                                        , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



WILLIAM SMITH
Comm. # 1519680
NOTARY PUBLIC-CALIFORNIA
Los Angeles County
My Comm. Expires Nov. 18, 2008

William Smith                                    (Seal)

Initials: L.R.

-6(CA) (0005)            Page 16 of 19            Form 3005   1/01

05 2161969

/.7

File No: █████████

# EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

Lot 4, of Tract No. 4961, in the County of Los Angeles, State of California, as per map recorded in Book 139 page(s) 41-44 inclusive of Maps, in the office of the County Recorder of said County.

Assessor's Parcel Number: ████████████████

Page 3                    05  2161969

EXHIBIT 3

Loan #: ▮▮▮▮▮▮▮▮▮

Record and Return to:

ORION FINANCIAL GROUP, INC.
2860 EXCHANGE BLVD #100
SOUTHLAKE, TX 76092

## ASSIGNMENT OF MORTGAGE

For Good and Valuable Consideration, the sufficiency of which is hereby acknowledged, the undersigned,

JP Morgan Chase Bank, N.A. f/k/a The Chase Manhattan Bank, an Ohio Corporation
whose address is 1111 Polaris Pkwy, Columbus, OH 43240

by these presents does convey, grant, bargain, sell, assign, transfer and set over the described mortgage, bearing the date of 25TH day of August 2005, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon to:

Chase Home Finance, LLC s/b/m Chase Manhattan Mortgage Corporation

Said mortgage is recorded on 9-8-05, Instd 05 2161969
in the State of CALIFORNIA, COUNTY of LOS ANGELES

ORIGINAL MORTGAGOR(s):    ROTH LINDA
ORIGINAL MORT. AMOUNT:    $574,000.00
PROPERTY ADDRESS:    3853 MOUNT VERNON DRIVE

LEGAL DESCRIPTION: SEE ATTACHED

IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed as a sealed instrument by its duly authorized officers.

Dated: 11/7/2005

JP Morgan Chase Bank, N.A. f/k/a The Chase Manhattan Bank

By: _Brenda K Townsend_                    By: _Tamara Hamilton_
Brenda K Townsend    Assistant Secretary       Tamara Hamilton    Assistant Secretary

### Orion Financial Group Inc.

By: _Samuel D. Hollis_
Samuel D. Hollis    Assistant Treasurer

ROTH, LINDA
SLS/OPD/CMFT
CHASE HOME FINANCE, LLC S/B/M CHASE MANHATTAN MORTGAGE

Louisiana, Parish of Ouachita

On 11/7/2005, before me, the undersigned, a Notary Public for said County and State, personally appeared Brenda K Townsend and Tamara Hamilton and Samuel D. Hollis personally known to me to be the persons that executed the foregoing instrument, and acknowledged that they are Assistant Secretary, Assistant Secretary, Assistant Treasurer respectively of JP Morgan Chase Bank, N.A. f/k/a The Chase Manhattan Bank, and that they executed the foregoing instrument and affixed its corporate seal as its duly authorized officers and that such execution was done as the free act and deed of JP Morgan Chase Bank, N.A. f/k/a The Chase Manhattan Bank, made by virtue of a Resolution of its Board of Directors.

Notary: _Karrie Harrell_
Karrie Harrell  69814  Louisiana, Parish of Ouachita
Lifetime Notary Commission

Karrie Harrell
Notary Public, ID# 69814
Ouachita Parish, Louisiana
Commission Expires, Lifetime

Prepared by: JP Morgan Chase Bank, N.A. f/k/a The Chase Manhattan Bank, 1040 Olivar Road, Monroe, LA 71201

1st



This page is part of your document - DO NOT DISCARD

**20151121330**

Pages:
0002

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

09/10/15 AT 10:39AM

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |

LEADSHEET

SEQ:
01

DAR - Mail (Intake)

THIS FORM IS NOT TO BE DUPLICATED

Loan #: ███
Record and Return to:

Temp Doc Number: ███

Batch Number ███

ORION FINANCIAL GROUP, INC.
2860 EXCHANGE BLVD #100
SOUTHLAKE, TX 76092

## ASSIGNMENT OF MORTGAGE

For Good and Valuable Consideration, the sufficiency of which is hereby acknowledged, the undersigned,

Chase Home Finance, LLC s/b/m Chase Manhattan Mortgage Corporation, a Delaware Corporation
whose address is 194 Wood Avenue South, Iselin, NJ 08830

by these presents does convey, grant, bargain, sell, assign, transfer and set over the described mortgage, bearing the date of 25TH day of August 2005, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon to: US Bank National Association, as Trustee, Successor in interest to Wachovia Bank N.A., as Trustee, for Chase Mortgage Finance Trust Series 2005-S31

Said mortgage is recorded on 9-8-05, INST 05 #161969
in the State of CALIFORNIA, COUNTY of LOS ANGELES

ORIGINAL MORTGAGOR(s):   ROTH LINDA
ORIGINAL MORT. AMOUNT:   $574,000.00
PROPERTY ADDRESS:         3853 MOUNT VERNON DRIVE

LEGAL DESCRIPTION: SEE ATTACHED

IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed as a sealed instrument by its duly authorized officers.

Dated: 11/8/2005                      Chase Home Finance, LLC s/b/m Chase Manhattan Mortgage Corporation

By: _____        By: _____
Brenda K Townsend    Assistant Secretary      Tamara Hamilton    Assistant Secretary

                                      Orion Financial Group Inc.

By: _____
Samuel D. Hollis    Assistant Treasurer        ROTH, LINDA        SLS/OPD/CMFT

                                      U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR IN

Louisiana, Parish of Ouachita

On 11/8/2005, before me, the undersigned, a Notary Public for said County and State, personally appeared Brenda K Townsend and Tamara Hamilton and Samuel D. Hollis personally known to me to be the persons that executed the foregoing instrument, and acknowledged that they are Assistant Secretary, Assistant Secretary, Assistant Treasurer respectively of Chase Home Finance, LLC s/b/m Chase Manhattan Mortgage Corporation, and that they executed the foregoing instrument and affixed its corporate seal as its duly authorized officers and that such execution was done as the free act and deed of Chase Home Finance, LLC s/b/m Chase Manhattan Mortgage Corporation, made by virtue of a Resolution of its Board of Directors.

Notary: _____
Karrie Harrell  69614  Louisiana, Parish of Ouachita
Lifetime Notary Commission

Karrie Harrell
Notary Public, ID# 69614
Ouachita Parish, Louisiana
Commission Expires: Lifetime

Prepared by: Chase Home Finance, LLC s/b/m Chase Manhattan Mortgage Corporation, 1040 Oliver Road, Monroe, LA 71201

2nd



This page is part of your document - DO NOT DISCARD

## 20151121331

Pages:
0002

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

09/10/15 AT 10:39AM

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |

LEADSHEET

SEQ:
02

DAR - Mail (Intake)

THIS FORM IS NOT TO BE DUPLICATED

EXHIBIT 4

Fill in this information to identify your case and this filing:

Debtor 1         Linda Roth
                 First Name          Middle Name          Last Name

Debtor 2
(Spouse, if filing)  First Name      Middle Name          Last Name

United States Bankruptcy Court for the: **Central District of California**

Case number _____

☐ Check if this is an
  amended filing

Official Form 106A/B

# Schedule A/B: Property                                          12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the
category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally
responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages,
write your name and case number (if known). Answer every question.

| **Part 1:** | **Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In** |
|---|---|

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.
☑ Yes. Where is the property?

**1.1.**  3853 Mount Vernon Dr.
Street address, if available, or other description

Los Angeles        Ca      90008
City                State   ZIP Code

Los Angeles
County

**What is the property?** Check all that apply.
☑ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local
property identification number: _____

Do not deduct secured claims or exemptions. Put
the amount of any secured claims on *Schedule D:
Creditors Who Have Claims Secured by Property.*

Current value of the    Current value of the
entire property?        portion you own?
$      685,000.00    $      685,000.00

Describe the nature of your ownership
interest (such as fee simple, tenancy by
the entireties, or a life estate), if known.

_____

☐ Check if this is community property
  (see instructions)

If you own or have more than one, list here:

**1.2.**  _____
Street address, if available, or other description

_____

City        State   ZIP Code

_____
County

**What is the property?** Check all that apply.
☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local
property identification number: _____

Do not deduct secured claims or exemptions. Put
the amount of any secured claims on *Schedule D:
Creditors Who Have Claims Secured by Property.*

Current value of the    Current value of the
entire property?        portion you own?
$_____    $_____

Describe the nature of your ownership
interest (such as fee simple, tenancy by
the entireties, or a life estate), if known.

_____

☐ Check if this is community property
  (see instructions)

Debtor 1    **Linda Roth**

First Name    Middle Name    Last Name          Case number *(if known)*_____

---

1.3.

Street address, if available, or other description

_____

_____

City      State    ZIP Code

_____

County

**What is the property?** Check all that apply.

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number: _____

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**    **Current value of the portion you own?**

$_____    $_____

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**

_____

☐ **Check if this is community property** (see instructions)

---

2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here. .................................................. → $     **685,000.00**

---

## Part 2:   Describe Your Vehicles

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
☑ Yes

| 3.1. | | |
|---|---|---|
| Make: | **Mercedes** | |
| Model: | **S Class** | |
| Year: | 2002 | |
| Approximate mileage: | 175,000 | |
| Other information: | | |

**Who has an interest in the property?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**    **Current value of the portion you own?**

$    2,500.00    $    2,500.00

If you own or have more than one, describe here:

| 3.2. | | |
|---|---|---|
| Make: | _____ | |
| Model: | _____ | |
| Year: | _____ | |
| Approximate mileage: | _____ | |
| Other information: | | |

**Who has an interest in the property?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**    **Current value of the portion you own?**

$_____    $_____

---

Debtor 1 _____ Linda Roth _____    Case number *(if known)* _____

| | | |
|---|---|---|
| 3.3 | Make: _____ <br> Model: _____ <br> Year: _____ <br> Approximate mileage: _____ <br> Other information: <br><br> _____ | **Who has an interest in the property?** Check one. <br> ☐ Debtor 1 only <br> ☐ Debtor 2 only <br> ☐ Debtor 1 and Debtor 2 only <br> ☐ At least one of the debtors and another <br><br> ☐ **Check if this is community property** (see instructions) | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property* <br><br> **Current value of the entire property?** / **Current value of the portion you own?** <br><br> $_____   $_____ |
| 3.4 | Make: _____ <br> Model: _____ <br> Year: _____ <br> Approximate mileage: _____ <br> Other information: <br><br> _____ | **Who has an interest in the property?** Check one. <br> ☐ Debtor 1 only <br> ☐ Debtor 2 only <br> ☐ Debtor 1 and Debtor 2 only <br> ☐ At least one of the debtors and another <br><br> ☐ **Check if this is community property** (see instructions) | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property* <br><br> **Current value of the entire property?** / **Current value of the portion you own?** <br><br> $_____   $_____ |

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**

   *Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

   ☐ No
   ☐ Yes

| | | |
|---|---|---|
| 4.1 | Make: _____ <br> Model: _____ <br> Year: _____ <br> Other information: <br><br> _____ | **Who has an interest in the property?** Check one. <br> ☐ Debtor 1 only <br> ☐ Debtor 2 only <br> ☐ Debtor 1 and Debtor 2 only <br> ☐ At least one of the debtors and another <br><br> ☐ **Check if this is community property** (see instructions) | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property* <br><br> **Current value of the entire property?** / **Current value of the portion you own?** <br><br> $_____   $_____ |

If you own or have more than one, list here:

| | | |
|---|---|---|
| 4.2 | Make: _____ <br> Model: _____ <br> Year: _____ <br> Other information: <br><br> _____ | **Who has an interest in the property?** Check one. <br> ☐ Debtor 1 only <br> ☐ Debtor 2 only <br> ☐ Debtor 1 and Debtor 2 only <br> ☐ At least one of the debtors and another <br><br> ☐ **Check if this is community property** (see instructions) | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* <br><br> **Current value of the entire property?** / **Current value of the portion you own?** <br><br> $_____   $_____ |

5. Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here ..................................... →   | $ 4,500.00 |

| Debtor 1 | _Carla Cota_ | Case number _(if known)_ _____ |
|---|---|---|
| | First Name    Middle Name    Last Name | |

**Part 3:    Describe Your Personal and Household Items**

Do you own or have any legal or equitable interest in any of the following items?

Current value of the portion you own?
Do not deduct secured claims or exemptions

6   Household goods and furnishings
    *Examples*: Major appliances, furniture, linens, china, kitchenware
    ☐ No
    ☑ Yes. Describe......... Major appliances, furniture, linens, kitchenware          $          1,000.00

7.  Electronics
    *Examples*: Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
    ☐ No
    ☑ Yes. Describe......... Televisions and radios; audio, video, stereo, and digital equipment; computers,          $          1,500.00
    printers, scanners; music

8   Collectibles of value
    *Examples*: Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
    ☑ No
    ☐ Yes. Describe.........          $

9   Equipment for sports and hobbies
    *Examples*: Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
    ☑ No
    ☐ Yes. Describe .........          $

10  Firearms
    *Examples*: Pistols, rifles, shotguns, ammunition, and related equipment
    ☑ No
    ☐ Yes. Describe.........          $

11  Clothes
    *Examples*: Everyday clothes, furs, leather coats, designer wear, shoes, accessories
    ☐ No
    ☑ Yes. Describe......... Everyday clothes, coats, shoes, accessories          $

12. Jewelry
    *Examples*: Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
    ☑ No
    ☐ Yes. Describe .......          $

13  Non-farm animals
    *Examples*: Dogs, cats, birds, horses
    ☑ No
    ☐ Yes. Describe .........          $

14  Any other personal and household items you did not already list, including any health aids you did not list
    ☑ No
    ☐ Yes. Give specific information. ..........          $

15  Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached          →          $          2,500.00
    for Part 3. Write that number here .........

Debtor 1 _____    Case number (if known) _____

| | |
|---|---|
| **Part 4:** | **Describe Your Financial Assets** |

Do you own or have any legal or equitable interest in any of the following?

Current value of the portion you own?
Do not deduct secured claims or exemptions.

16. **Cash**
    Examples: Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

    ☐ No
    ☑ Yes ........................................................................................    Cash ........    $_____250.00

17. **Deposits of money**
    Examples: Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

    ☐ No
    ☑ Yes ..............    Institution name:

| | | | |
|---|---|---|---|
| 17.1. Checking account | Bank of America | $ | 250.00 |
| 17.2 Checking account | | $ | |
| 17.3 Savings account | | $ | |
| 17.4 Savings account | | $ | |
| 17.5 Certificates of deposit | | $ | |
| 17.6 Other financial account | | $ | |
| 17.7 Other financial account | | $ | |
| 17.8 Other financial account | | $ | |
| 17.9 Other financial account | | $ | |

18. **Bonds, mutual funds, or publicly traded stocks**
    Examples: Bond funds, investment accounts with brokerage firms, money market accounts

    ☑ No
    ☐ Yes .......    Institution or issuer name:

    $_____
    $_____
    $_____

19. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

    ☑ No    Name of entity:    % of ownership:
    ☐ Yes. Give specific information about them ........    0% ___%    $_____
    0% ___%    $_____
    0% ___%    $_____

Debtor 1 _____    Case number (if known)_____
First Name    Middle Name    Last Name

20. Government and corporate bonds and other negotiable and non-negotiable instruments

*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

☑ No
☐ Yes. Give specific    Issuer name:
information about
them.....................    _____    $_____
                           _____    $_____
                           _____    $_____

21. Retirement or pension accounts

*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

☑ No
☐ Yes. List each
account separately..    Type of account:    Institution name:

                        401(k) or similar plan:    _____    $_____
                        Pension plan:    _____    $_____
                        IRA:    _____    $_____
                        Retirement account:    _____    $_____
                        Keogh:    _____    $_____
                        Additional account:    _____    $_____
                        Additional account:    _____    $_____

22. Security deposits and prepayments

Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications
companies, or others

☑ No
☐ Yes.....................    Institution name or individual:

                        Electric:    _____    $_____
                        Gas:    _____    $_____
                        Heating oil:    _____    $_____
                        Security deposit or rental unit    _____    $_____
                        Prepaid rent:    _____    $_____
                        Telephone:    _____    $_____
                        Water:    _____    $_____
                        Rented furniture:    _____    $_____
                        Other:    _____    $_____

23. Annuities (A contract for a periodic payment of money to you, either for life or for a number of years)

☑ No
☐ Yes.....................    Issuer name and description:

                        _____    $_____
                        _____    $_____
                        _____    $_____

Debtor 1 _____     Case number (if known)_____
          First Name    Middle Name    Last Name

24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

☑ No
☐ Yes ..............................  Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

_____  $_____
_____  $_____
_____  $_____

25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers
exercisable for your benefit

☑ No
☐ Yes. Give specific
    information about them. ..  [                              ]  $_____

26. Patents, copyrights, trademarks, trade secrets, and other intellectual property
Examples: Internet domain names, websites, proceeds from royalties and licensing agreements

☑ No
☐ Yes. Give specific
    information about them. ...  [                              ]  $_____

27. Licenses, franchises, and other general intangibles
Examples: Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

☑ No
☐ Yes. Give specific
    information about them. ..  [                              ]  $_____

Money or property owed to you?                                    Current value of the
                                                                  portion you own?
                                                                  Do not deduct secured
                                                                  claims or exemptions.

28. Tax refunds owed to you

☑ No
☐ Yes Give specific information
    about them, including whether        Federal:  $_____
    you already filed the returns        State:    $_____
    and the tax years. ...................  Local:    $_____

29. Family support
Examples: Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

☑ No
☐ Yes. Give specific information. ...........
                                            Alimony:            $_____
                                            Maintenance:        $_____
                                            Support:            $_____
                                            Divorce settlement: $_____
                                            Property settlement: $_____

30. Other amounts someone owes you
Examples: Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation,
Social Security benefits; unpaid loans you made to someone else

☑ No
☐ Yes. Give specific information. .............
                                                                  $_____

Official Form 106A/B                Schedule A/B: Property                              page 7

Debtor 1 _____ Linda Pota _____    Case number _____
First Name    Middle Name    Last Name

**31. Interests in insurance policies**
*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

☑ No
☐ Yes. Name the insurance company    Company name:    Beneficiary:    Surrender or refund value:
of each policy and list its value. _

_____    _____    $_____
_____    _____    $_____
_____    _____    $_____

**32. Any interest in property that is due you from someone who has died**
If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive
property because someone has died.

☑ No
☐ Yes. Give specific information. ...........    _____    $_____

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
*Examples:* Accidents, employment disputes, insurance claims, or rights to sue

☑ No
☐ Yes. Describe each claim. ...............    _____    $_____

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights
to set off claims**

☑ No
☐ Yes. Describe each claim. ...............    _____    $_____

**35. Any financial assets you did not already list**

☑ No
☐ Yes. Give specific information. ...........    _____    $_____

**36.** Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached
for Part 4. Write that number here ....................................................→    $_____

**Part 5:    Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.**

**37. Do you own or have any legal or equitable interest in any business-related property?**
☑ No. Go to Part 6.
☐ Yes. Go to line 38.

Current value of the
portion you own?
Do not deduct secured claims
or exemptions.

**38. Accounts receivable or commissions you already earned**
☐ No
☐ Yes. Describe ........    _____    $_____

**39. Office equipment, furnishings, and supplies**
*Examples:* Business-related computers, software, modems, printers, copiers, fax machines, rugs, telephones, desks, chairs, electronic devices
☐ No
☐ Yes. Describe ........    _____    $_____

Debtor 1    _Linda Roth_____    Case number (if known) _____
       First Name    Middle Name    Last Name

40. Machinery, fixtures, equipment, supplies you use in business, and tools of your trade
☑ No
☐ Yes. Describe...... _____    $_____

41. Inventory
☑ No
☐ Yes. Describe...... _____    $_____

42. Interests in partnerships or joint ventures
☑ No
☐ Yes. Describe......    Name of entity:                              % of ownership:
                        _____    ____%    $_____
                        _____    ____%    $_____
                        _____    ____%    $_____

43. Customer lists, mailing lists, or other compilations
☑ No
☐ Yes. Do your lists include personally identifiable information (as defined in 11 U.S.C. § 101(41A))?
       ☐ No
       ☐ Yes. Describe......... _____    $_____

44. Any business-related property you did not already list
☑ No
☐ Yes. Give specific    _____    $_____
   information .........    _____    $_____
                        _____    $_____
                        _____    $_____
                        _____    $_____
                        _____    $_____

45. Add the dollar value of all of your entries from Part 5, including any entries for pages you have attached
    for Part 5. Write that number here ............................    →    $_____

**Part 6:    Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.**
If you own or have an interest in farmland, list it in Part 1.

46. Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?
☑ No. Go to Part 7.
☐ Yes. Go to line 47.

                                                    Current value of the
                                                    portion you own?
                                                    Do not deduct secured claims
                                                    or exemptions.

47. Farm animals
    Examples: Livestock, poultry, farm-raised fish
☑ No
☐ Yes .................... _____
                                                    $_____

Case 2:19-bk-17812-SK    Doc 1    Filed 06/24/19    Entered 06/24/19 12:00:35    Desc
Main Document    Page 20 of 49

48. Crops—either growing or harvested
☐ No
☐ Yes. Give specific
  information..........                                                    $_____

49. Farm and fishing equipment, implements, machinery, fixtures, and tools of trade
☐ No
☐ Yes.............                                                        $_____

50. Farm and fishing supplies, chemicals, and feed
☐ No
☐ Yes.............                                                        $_____

51. Any farm- and commercial fishing-related property you did not already list
☐ No
☐ Yes. Give specific
  information..........                                                    $_____

52. Add the dollar value of all of your entries from Part 6, including any entries for pages you have attached
  for Part 6. Write that number here ..............................  →  $_____

## Part 7: Describe All Property You Own or Have an Interest in That You Did Not List Above

53. Do you have other property of any kind you did not already list?
*Examples: Season tickets, country club membership*
☐ No
☐ Yes. Give specific
  information ........                                                     $_____
                                                                          $_____
                                                                          $_____

54. Add the dollar value of all of your entries from Part 7. Write that number here ..............  →  $_____

## Part 8: List the Totals of Each Part of this Form

55. Part 1: Total real estate, line 2 ..............................  →  $    485,000.00

56. Part 2: Total vehicles, line 5               $    4,500.00

57. Part 3: Total personal and household items, line 15    $    2,500.00

58. Part 4: Total financial assets, line 36      $_____

59. Part 5: Total business-related property, line 45    $_____

60. Part 6: Total farm- and fishing-related property, line 52    $_____

61. Part 7: Total other property not listed, line 54    + $_____

62. Total personal property. Add lines 56 through 61, ...........  $    7,000.00    Copy personal property total  →  + $    7,000.00

63. Total of all property on Schedule A/B. Add line 55 + line 62...........................  $    492,000.00

Official Form 106A/B                    Schedule A/B: Property                    page 10

Fill in this information to identify your case:

Debtor 1 _Linda_ _Potta_
        First Name    Middle Name    Last Name

Debtor 2
(Spouse, if filing) First Name    Middle Name    Last Name

United States Bankruptcy Court for the: _central_ District of _Calif_

Case number
(if known)

☐ Check if this is an
amended filing

## Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

1. Do any creditors have claims secured by your property?
   ☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.
   ☐ Yes. Fill in all of the information below.

## Part 1:    List All Secured Claims

2. List all secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | Column A<br>Amount of claim<br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim | Column C<br>Unsecured portion<br>If any |
|---|---|---|---|

**2.1** Ocwen
Creditor's Name

Number      Street

Box 79135

Phoenix,        AZ    85062
City            State  ZIP Code

Who owes the debt? Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim relates to a community debt

Date debt was incurred _____

Describe the property that secures the claim:    $ 450,000.00    $ 485,000.00    $

Real Property, debtors primary residence.

As of the date you file, the claim is: Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

Nature of lien. Check all that apply
☑ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Last 4 digits of account number  1  6  0  2

**2.2**
Creditor's Name

Number      Street

_____

City            State  ZIP Code

Who owes the debt? Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim relates to a community debt

Date debt was incurred _____

Describe the property that secures the claim:    $_____    $_____    $_____

As of the date you file, the claim is: Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

Nature of lien. Check all that apply
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Last 4 digits of account number ___ ___ ___ ___

Add the dollar value of your entries in Column A on this page. Write that number here:    $ 450,000.00

EXHIBIT 5

Loan Number 

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I"):[1]  LINDA  ROTH
Lender or Servicer ("Lender"):  JPMORGAN CHASE BANK, N.A.
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"):  AUGUST
25, 2005
Loan Number:
Property Address ("Property"):  3853 MT VERNON DR, LOS ANGELES, CALIFORNIA 90008

If my representations and covenants in Section 1 continue to be true in all material respects, then this
Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and
supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.
The Mortgage and Note together, as they may previously have been amended, are referred to as the
"Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given
to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will
send me a signed copy of this Agreement.  This Agreement will not take effect unless the
preconditions set forth in Section 2 have been satisfied.

1.      **My Representations and Covenants.**  I certify, represent to Lender, covenant and agree:

A.      I am experiencing a financial hardship, and as a result, (i) I am in default under the
Loan Documents or my default is imminent, and (ii) I do not have sufficient income or
access to sufficient liquid assets to make the monthly mortgage payments now or in
the near future;

B.      One of the borrowers signing this Agreement lives in the Property as a principal
residence, and the Property has not been condemned;

C.      There has been no impermissible change in the ownership of the Property since I
signed the Loan Documents. A permissible change would be any transfer that the
lender is required by law to allow, such as a transfer to add or remove a family
member, spouse or domestic partner of the undersigned in the event of a death,
divorce or marriage;

D.      I have provided documentation for all income that I receive (and I understand that I
am not required to disclose child support or alimony unless I chose to rely on such
income when requesting to qualify for the Home Affordable Modification Program
("Program"));

E.      Under penalty of perjury, all documents and information I have provided to Lender in
connection with this Agreement, including the documents and information regarding
my eligibility for the Program, are true and correct;

F.      If Lender requires me to obtain credit counseling in connection with the Program, I will
do so; and

G.      I have made or will make all payments required under a trial period plan.

H.      If I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I."  For purposes of this document
words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie
Mae/Freddie Mac  UNIFORM INSTRUMENT   ver. 09_08_2011_12_07_26   Form 3157  3/09 (rev. 10/10)(CHF rev. 03/11)
(page 1 of 8 pages)

Loan Number [REDACTED]

of the Loan Documents, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2.  **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A.  If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and
    B.  I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.  **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **OCTOBER 01, 2011** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on **OCTOBER 01, 2011.**

    A.  The Maturity Date will be: **SEPTEMBER 01, 2035.**

    B.  The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be **$625,646.91** (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

    C.  **$254,300.00** of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is **$371,346.91.** Interest at the rate of **2.000%** will begin to accrue on the Interest Bearing Principal Balance as of **SEPTEMBER 01, 2011** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **OCTOBER 01, 2011.** My payment schedule for the modified Loan is as follows:

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie
Mae/Freddie Mac  UNIFORM INSTRUMENT  ver. 09_08_2011_12_07_26    Form 3157  3/09 (rev. 10/10)(CHF rev. 03/11)
(page 2 of 8 pages)

Loan Number

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins on | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.000% | 09/01/2011 | $1,124.53 | $613.45 May adjust periodically | $1,737.98 May adjust periodically | 10/01/2011 | 60 |
| 6 | 3.000% | 09/01/2016 | $1,306.45 | May adjust periodically | May adjust periodically | 10/01/2016 | 12 |
| 7 | 4.000% | 09/01/2017 | $1,498.47 | May adjust periodically | May adjust periodically | 10/01/2017 | 12 |
| 8-24 | 4.250% | 09/01/2018 | $1,547.47 | May adjust periodically | May adjust periodically | 10/01/2018 | 204 |

Notwithstanding the foregoing schedule, I agree that unless sooner paid, I will have a final balloon payment in the amount of **$469,608.51** due and payable on the New Maturity Date.

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step, or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F.  I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie
Mae/Freddie Mac  UNIFORM INSTRUMENT    ver. 09_08_2011_12_07_28    Form 3157  3/09 (rev. 10/10)(CHF rev. 03/11)
(page 3 of 8 pages)

Loan Number ████████

4.    **Additional Agreements.** I agree to the following:

A.    That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.    That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C.    To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.    That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E.    That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.    That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.    That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.    That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie
Mae/Freddie Mac  UNIFORM INSTRUMENT   ver. 09_08_2011_12_07_26   Form 3157 3/09 (rev. 10/10)(CHF rev. 03/11)
(page 4 of 8 pages)

Loan Number [REDACTED]

I.   That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.   That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.   That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective document, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L.   Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M.   That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity.   In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N.   That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents."   I agree to deliver the

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie
Mae/Freddie Mac  UNIFORM INSTRUMENT   ver. 09_08_2011_12_07_26    Form 3157  3/09 (rev. 10/10)(CHF rev. 03/11)
(page 5 of 8 pages)

**Loan Number** ███████

Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.  That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

P.  If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit. This means that I cannot obtain additional advances, and must make payments according to this Agreement.  (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit, and if so, I confirm and acknowledge that no additional advances may be obtained.)

(SIGNATURES CONTINUE ON FOLLOWING PAGES)

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie
Mae/Freddie Mac  UNIFORM INSTRUMENT   ver. 09_08_2011_12_07_28   Form 3157  3/09 (rev. 10/10)(CHF rev. 03/11)
(page 6 of 8 pages)

Loan Number [REDACTED]

**TO BE SIGNED BY BORROWER ONLY**

BORROWER SIGNATURE PAGE TO HOME AFFORDABLE MODIFICATION AGREEMENT BETWEEN
JPMORGAN CHASE BANK, N.A. And LINDA ROTH, LOAN NUMBER [REDACTED] WITH A
MODIFICATION EFFECTIVE DATE OF October 01, 2011

In Witness Whereof, the Borrower(s) have executed this agreement.

_Linda Roth_                                     Date: 09 , 15 , 2011
Borrower - LINDA ROTH

State of CALIFORNIA                    )
County of  Los Angeles            )

On  September 15, 2011                      , before me, Bettina
M. Carver, Ca. Notary Public , (insert here name and title of the officer), personally appeared
LINDA ROTH, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signatures on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

Signature  _Beth M. Ca_                     (Seal)

[Notary Seal: BETTINA M. CARVER, COMM. #1791173, NOTARY PUBLIC-CALIFORNIA, Los Angeles County, Comm. Expires Feb 14, 2012]

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie
Mae/Freddie Mac  UNIFORM INSTRUMENT   ver. 09_08_2011_12_07_26   Form 3157  3/09 (rev. 10/10)(CHF rev. 03/11)
(page 7 of 8 pages)

Loan Number [REDACTED]

**TO BE SIGNED BY LENDER ONLY**

LENDER SIGNATURE PAGE TO HOME AFFORDABLE MODIFICATION AGREEMENT BETWEEN
JPMORGAN CHASE BANK, N.A. And LINDA  ROTH, LOAN NUMBER [REDACTED] WITH A
MODIFICATION EFFECTIVE DATE OF October 01, 2011

In Witness Whereof, the Lender has executed this Agreement.

Lender

JPMORGAN CHASE BANK, N.A.

By: _____        Claudia Gamboa
                                                                                   Vice President
Date: _____10-11-11_____


State of COLORADO
County of DENVER

The foregoing instrument was acknowledged before me this ___11___ day of _OCTOBER_
_2011_ by _CLAUDIA GAMBOA_, Vice President of JPMORGAN CHASE BANK,
N.A..

_____
(signature of person taking acknowledgment)

_____NOTARY_____
(title or rank)

[SEAL]
AHMED ELOUMRANI
NOTARY PUBLIC
STATE OF COLORADO
MY COMMISSION EXPIRES 1-20-2015

_____
(serial number, if any)

My Commission expires: _____


JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie
Mae/Freddie Mac  UNIFORM INSTRUMENT    ver. 09_08_2011_12_07_26    Form 3157  3/09 (rev. 10/10)(CHF rev. 03/11)
(page 8 of 8 pages)

LENDER: JPMORGAN CHASE BANK, N.A.

LOAN ██████████                                    08/25/05
PROPERTY ADDRESS: 3853 MOUNT VERNON DRIVE, LOS ANGELES, CA 90008

## SIGNATURE CERTIFICATION/AFFIDAVIT

I HEREBY CERTIFY THAT I, <u>LINDA ROTH</u>_____, DO SIGN MY NAME
AS FOLLOWS. THIS IS MY TRUE AND ACCURATE SIGNATURE:

*Linda Roth*

BORROWER  LINDA ROTH

State of  CALIFORNIA_____

County of  LOS ANGELES_____

Sworn and Subscribed before me, a notary for the Jurisdiction given this 25th day of August 2005

Notary Public

(Seal)

My Commission Expires: Nov. 14 2008

WILLIAM SMITH
Comm. #1519880
NOTARY PUBLIC - CALIFORNIA
Los Angeles County
My Comm. Expires Nov. 14, 2008

THIS IS TO CERTIFY THAT I HAVE REVIEWED THE SIGNATURE ON THE ABOVE CAPTIONED
BORROWER AND HE/SHE HAS CONSISTENTLY SIGNED HIS/HER NAME ON ALL DOCUMENTS
WITHIN OUR FILE AS HE/SHE DID ON THE NOTE.

_____        _____
Lender Representative                Title

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## NAME AFFIDAVIT
### Complete if AKA (also known as) is required.

THIS IS TO CERTIFY THAT:  _____
_____

_____

& _____ ARE ONE AND THE SAME
PERSON. THIS NAME AFFIDAVIT IS COMPLETED IN CONNECTION WITH DOCUMENTS TO OBTAIN
A FIRST MORTGAGE LOAN ON THE SUBJECT PROPERTY.

Please sign each way name appears.

_____
BORROWER:

_____
BORROWER:

_____
BORROWER:

State of _____

County of _____

Sworn and Subscribed before me, a notary for the Jurisdiction given this _____ day of _____.

_____
Notary Public

(Seal)

My Commission Expires: _____

SIGNATURE/NAME AFFIDAVIT
C- 7039 (12/97) (replaces C-7035 1/97 & C-7039 12/95)